Good morning. May it please the Court, I'm Don Webb for the Institute. The Institute is a group of scientists interested in protecting wildlife, and I will try to reserve some time for rebuttal. This is a case that falls under the general concern of whether Congress can actually control the administrative agencies that it creates. Is count one out of the case? I'm sorry. I was just going to comment, that's a question people have worried about for a long time. Indeed, Your Honor. And Congress has tried, let me just defer that question for 20 seconds. Yeah. And Congress has tried to do that by various means. It began early on, a key TAM actions. There was the Administrative Procedures Act, 47 I believe. Various citizen suits proliferating during the 1970s. Is the first claim for relief now out of the case? We think it is, except that we did not get all the available injunctive relief we could have gotten on that claim. I want to know, did you appeal, and does the appeal remain pending, the Court's order in which you won on the first claim for relief? We appealed the entire judgment by the Court, as I recall. And so we would like to get that injunctive relief. We think that injunctive relief I thought you got an injunction. We got a small injunction, we'd like a larger one. We got an injunction as to that particular petition, we'd like an injunction as to other petitions. You want an injunction against what? We have identified a ladder of relief. There are quite a few things in the list at the back of the complaint. And we have, there's an issue that I call the enumeration issue. You know, do we have to list everything? Hold on. I still don't have a satisfactory answer to my question. I look at your statement of issues in your brief. It says, did the district court err in dismissing the Institute's two challenges to the Fish and Wildlife Service, repeated practice of delaying responses to citizen listing petitions? That looks to me like your second and third claims for relief, not your first claim for relief. It does. Our briefing is focused on, can you hear me okay? Now I can. Thank you. All right. It looks to me like your second and third claims, not your first claim. Your answer to me when I said, so it's the first claim for relief out of the case, I couldn't tell for sure whether it was yes or no. My answer was wishy-washy. The answer, I'd like it to be no. Our briefing is focused, I think, exclusively on claims two and three. Okay. Second and third claims, that's what's left. We'd like to reserve some injunctive relief under the first claim. And we'd like to be able to amend also, if there is a. I don't care about what you like. I just want to know whether this Court has to render a judgment about the first claim for relief. I take it you want, if we send it back, you want to be able to do various things. That's right, Your Honor. Since you have an injunction in the district court, there's still some things you can do with respect to that. We think that there is. Now, you did not move the district court for leave to amend. So there is no denial of a motion for leave to amend that we, you want us to decide is erroneous. Is that right? That's correct. Okay. And I'm sorry, did I answer your question, Your Honor? I think so. Judge Schroeder. Before us are just what's in your brief. We have a large ladder that goes from the mildest relief, the most mild relief has already been granted, up to more comprehensive relief, including some intermediates. For example, we have identified subsequent to the briefing that there are perhaps 72, perhaps something under 100 petitions that have been illegally delayed or failed to act upon. If we were to, say, amend the complaint, would we have to list each petition? Or can this court grant or can the district court grant an ongoing injunction, a comprehensive injunction, a prohibitory injunction, I hasten to add, not a structural injunction, that says to the agency, you, when it says 12 months, it means that. Wait a minute. On the second and third claims for relief, it looks like it doesn't address the particular demand that your group made on the agency. The second and third claims appear to be more general demands that the agency should be more efficient, do our stuff and our kind of stuff first before it does some other things that are less important. I think I have to disagree with that. We're not asking for efficiency. We're not asking for, quote, our stuff. It's a characterization issue. We're asking the agency to obey the very strict deadlines that Congress laid down. In general, for other people? Well, here's the issue. We have an interest in some of these petitions, we believe, because we typically as a scientific organization author, in some cases, we've authored entire petitions for citizen groups. So what you think is we should, what, take the agency under and to put it under a special master or something? Well, that would be one option for the courts. Another one would simply be to put, yeah, I appreciate the facial expression, Your Honor. Another would be simply to issue an injunction. And then the district court might close the case out. I don't, you know, to be honest, Your Honor, I frankly don't know what it's going to take, because this Court has already ruled that you can't promote, that the service cannot promote their own internally derived candidates, work on that, over citizen petitions. And yet we've got it right here in black and white, literally, in the excerpt of record, that that's exactly what they continued to do afterwards. Well, what, you're not now challenging any final agency action, right? I'm sorry, violation of what? You're not now challenging any final agency action. Is that correct? No, this is a failure. No, there's no final agency action. Hence, Lujan does not apply. Now, the Administrative Procedures Act permits challenges to final agency action. But that's not what this is. The Administrative Procedures Act does do that. Yes. Under certain circumstances that have been. And it also permits challenges to failures to act. And that's what one of our claims is, and that's what I call the promotion claim, claim two. Then we have claim three, which is an ESA claim. Can you give me a case that says that the APA allows an appeal for a failures act? Not a final decision saying no, which is one way of saying failure act, but just not acting at all. That I can appeal from the district court to the. No, under the APA agreement. Under the APA. Well, you know, I didn't bring the statute up here, but. Just give me one case where the court has said the agency is ordered to finish its work or to do its work faster. When they violated a direct mandatory deadline? Yes. Well, there are. I think that was assumed by the Supreme Court in Sioux v. Norton where they found that, you know, if it was a, if it's mandatory and if there's been a clear violation, then we could do it, but this wasn't mandatory. I didn't anticipate that that issue would even arise. It's quite, we think it's quite clear in the statutory text. Your claim number two is that the defendants are promoting non-mandatory work, such as making findings on candidate species before mandatory duties, and you want them ordered to take mandatory duties rather than non-mandatory. We want them to. Well, let me, there's an important phrase. That's correct. There's an important phrase. It's not a final action. It's not a final action because they, except to the extent that the APA also, and I believe this is in definition 13, also Congress, to make the APA comprehensive, defined a failure to act as a final action. But let me put that phrase into Your Honor's quotation. When that promotion of internal candidates delays a petition beyond a mandatory deadline, then one can bring suit, and that's what we're suing over. We're not saying they can't work on internal candidates. We think that's an important alternative way, and sometimes the major way that the service performs its lawful function. Well, it looks like if I look at 16 U.S.C. 1540G on citizen suits, it looks like you had a claim for them to rule on your petition, and they didn't do it when they were supposed to, so you got an injunction. They had to do it. They did it, and goodbye 1540G. And now I've got second and third claims for relief that say their promotion of non-mandatory work before that of mandatory duties is arbitrary and capricious, and their practice of failing to act on petitions is violative of law, but I don't have any private right of action statute to hang it on. Oh, we would hang Claim 2 on the APA, and we hang Claim 3 on the 1540G. Well, the APA requires a final agency action. Well, there are two. That's why you lost in the district court. That's what the district court thought, right? Yes, and we don't agree. Failure to act is right there in the sentence I'll bring. Where you have a statute that gives you a private cause of action for failure to act, which some do. Well, the ESA does that. Which section are you talking about? 1540G1C, Your Honor. And let me give Your Honors a case. It's one of your own cases. It's a critical habitat case. The service asserted that the suit was under the APA, but plaintiff's claims fell squarely under the ESA because it said the secretary shall designate critical habitat. Now, you know, even if I go with you pretty far in reading that to take the final agency action requirement out, it's hard for me to go far enough because it says failure of the secretary to perform an act which is not discretionary. And your second claim says perform nonmandatory work before mandatory work. I would think that virtually any agency would have discretion about the way it directs its employees to perform work, the way it assigns work, who gets assigned which work and in what order. And then on the third claim, it says failure to act on petitions generally, but not a particular petition of yours. That was the first claim for relief. And you don't have standing, I wouldn't think, to assert that the agency's generally not conforming to deadlines. Well, we have a list of petitions. We didn't think we needed to put that list in the complaint. These are petitions that have been illegally delayed under the ESA. The last time we checked with the service via Freedom of Information Act request and we didn't get to do discovery. These are your petitions? We think that some of those petitions are petitions for which we authored some of the text. Wait a minute. Some of them. You evaded my question. We did not. Are you the petitioners? Let me directly answer that question. I didn't ask you whether somebody called you on a phone and you talked to them and then you think that they gave you some of your stuff. We did not. We're not the petitioner on any of those petitions. So you're not the petitioner on any of those petitions. Not now. But we were at the time that standing was established when the case was filed. So there's a. But the complaint didn't say that.  We did not allege that in the complaint. Let me just understand this. The APA talks about final agency actions. The EPA, the Endangered Species Act, talks about failure of the Secretary to perform any act or duty under the statute declaring species endangered. The district court said you're not alleging in these claims any failure to perform a specific act, and you're not challenging any final agency action. You're trying to challenge an entire pattern of the way the agency proceeds in not meeting deadlines and not meeting timelines. Well, is this true? We'd like to get at that pattern to the extent that we can. That's the problem we have. To what extent do the statutes give you the right to do that? And it would appear from just reading the statute, from what the district court said, that the district court was saying, and it would appear from reading the statutes, that you would have to go after each one and not just say we don't like the way the agency is doing business. At summary judgment time, we would list all those. Now, some of them would differ. There would be some new ones than what we have now. Some of the ones we have now are 10 years out, 10 years of delay, almost 10 years, within a month or two. And some would hopefully drop off as the service completes at least some of its work. But we think that the APA, under the failure to act provision, the phrase in the APA, gives us the ability to challenge based on claim two. And we believe that the ESA does give us the right under claim three, and I'm down below five. But I'd like to When you come back, would you give us the strongest case that permits this kind of programmatic challenge to, in a complaint, and then, and so that we can see what we're I will, Your Honor, but I don't, I want to just cut out that programmatic word. Okay. We don't even know if they have a program. We've got Maybe when you come back, you could also help with these words, on his own behalf, the citizen supervision of AB 1540G1. Okay. Thank you. Thank you. May it please the Court. I'm John Arbab for the Appellees. You'll have to speak up. Could you talk louder? Yes, I'll try. In this case, the district court correctly dismissed claims two and three of the Institute's second amended complaint for lack of subject matter jurisdiction. These claims are properly characterized as programmatic challenges to the service's manner of implementing the listing provisions of the ESA, and as such, are not within the jurisdiction of the district court under the Administrative Procedure Act. Rather than challenge discreet final agency actions as required by the APA in Section 704, the Institute broadly sought to challenge the manner in which the service prioritizes its work in administering Section 4 of the ESA, that is, Claim Number 2, and sought to challenge an alleged general practice of delaying action on or failing to act on citizen petitions to list species, that is, Claim Number 3. The citizen suit provision of the ESA, 16 U.S.C. Section 1540, G1, C, also did not vest the district court with jurisdiction over claims two and three. Rather, fairly construed, these claims challenge the service's alleged maladministration of the ESA and do not challenge the agency's failure to perform a nondiscretionary duty as required by the citizen suit provision. Such claims are not authorized by the citizen suit provision. I think it's important to keep in mind in considering claims two and three, the Institute's concession, at least in its briefs, that Claim 1 is moot. That is, it's challenged the service's failure to issue a 90-day finding on the Institute's petition to list the eastern sage-grouse. If, as the Institute now concedes, Claim 1 is moot, it is difficult to understand the remainder of the operative complaint as being anything other than a programmatic challenge. Counsel, I notice you're reading something. Are you reading back your brief? No, Your Honor. I can't remember the exact words of the brief. No, Your Honor, but I do have some remarks prepared. It is difficult to understand the operative complaint as being anything other than a systematic, a programmatic challenge. The appellant says that they're really getting at specific ones, and they'll tell us what they are when they get to the point of filing a motion to tell the agency that they need to do this. Now, I suppose that under the rules, a complaint is amended in accordance with, can be amended, and can automatically be deemed amended in according to the proof that's submitted. So what's wrong with that? Why can't they proceed that way? The agency is not acting in a timely manner or routinely. The complaint has been amended a number of times already. The second amended complaint, which is the one that the district court had before it and which the district court dismissed for lack of jurisdiction, was fairly construed as alleging programmatic challenges to the way the agency administers Section 4 of the ESA. Well, but this gets to be a little circular because the program is the failure to act in a timely manner with respect to specific matters. Well, the complaint listed, in addition to the Eastern State grouse petition, listed a number of other petitions which the institute felt had been improperly delayed and not acted on. I didn't see that. I'm looking at the second amended complaint at the excerpts, page 14. I thought all it said was about this bird, the grouse. Your Honor, I believe that the institute did in the second amended complaint. I can't hear you. The institute did allege two or three other petitions that it believed had not been timely acted on. And I must have missed it. Could you just point to the Bayesian line? I might refer to the excerpts just for a moment. While you're getting it, I have another question for you to be thinking about so you can respond. I frankly ---- Your Honor, to answer your question, on excerpts of record, page 24, the complaint references in paragraph 3.42 a petition to list the Western gray squirrel. I see. In 3.43 ---- That's not one of their claims for relief. It's in the preliminary discussion. And then the ---- It's in the factual allegations. I see. And there are two other ones listed after that. But then they don't ask for any relief on the Western gray squirrel and the monosage grouse. Is that right? I don't believe so. Those were the subject of separate pieces of litigation. And ---- They had separate lawsuits about those? Yes. And whether the institute was entitled to relief on those species was decided in those other suits. I see. Decided in other suits. Okay. Let me get at something else I don't understand. They had two other lawsuits for two other critters? There are ---- The institute has brought a number of suits involving different creatures, different species. Yes, Your Honor. I wonder what you'll have to give priority to, the lawsuits or the listings. Well, that's part of the difficulty that the service finds itself in. Let me ask a different question here. I don't understand something about the amendment. It seems to me they want us on remand to direct the district court to grant leave to amend. I don't understand. If we remand any, if we affirm there's nothing to remand. That's correct, Your Honor. If we reverse, it goes back to the district court and Rule 15 applies, which requires the district court to be liberal in granting motions for leave to amend. Am I missing something here? Your Honor, if the case were sent back, then presumably this institute would have an opportunity to amend its complaint. Does it get sent back if we affirm? No. Does it get sent back if we reverse? If you reverse and find that the district court did have subject matter jurisdiction, then, yes, the case would go back to the district court. And is there any reason Rule 15, liberal leave to amend, wouldn't apply unless we order it? It would be up to the district court in the first instance to decide whether to allow the complaint to be amended for a third time. And that be under Rule 15? Yes, I believe so. And Rule 15 commands that motions for leave to amend be liberally granted? Well, there's – there would be questions of whether it would cause prejudice to the other side and considerations along those lines, but generally a complaint should be allowed to be amended if there aren't any of those problems present. Okay. Thank you. What's your position with the fact that in the earlier litigation of the district court there was no motions for leave to amend? Would that bar any motions for leave to amend if we were amended? I think it would stand as a bar to this Court's considering a leave – a motion for leave to amend. But if the entire case were sent back to the district court, then I do believe it would be open to the institute. It's something just to take – for the district court to take into consideration? Yes. And it would be reviewed under an abuse of discretion standard if there were any further appeal. Claims 2 and 3 of the complaint, the Second Amended Complaint, are programmatic challenges to the service's manner of implementing the listing provisions of ESA Section 4 and are therefore impermissible types of challenges. Claim 2 alleges a practice of promoting nonmandatory work before mandatory duties with respect to listing. Could you either move the microphone down, because when you read from your remarks your head goes down, your voice goes down, and it doesn't go to the microphone. I apologize, Your Honor. All right. Claim 2 broadly seeks to force the service to alter the manner in which it allocates available funds and staff in carrying out its functions under the statute. This challenges the listing program as a program and not as a particular final agency listing action or even a series of particular final agency listing actions. The ESA does not specify the manner in which the service must prioritize its statutory responsibilities in light of budgetary and staffing constraints. But isn't delay through bureaucratic means, in effect, denial? Isn't that what they're claiming here? One of the claims goes to the delay in making findings on petitions. I believe that is encompassed by Claim 3. And the question there is whether there's the district court had jurisdiction over that type of complaint, that kind of allegation. I mean, if the delay, as counsel says, for 12 years, the determination of whether a list of species was endangered, by that time the species might no longer be endangered. It may be extinct. Well, you don't question that that allegation with respect to the listing of a specific species would be proper, do you? I'm sorry. I mean, the allegation that they have failed to act in a timely manner on this particular listing, I thought you would say is appropriate. Yes. Insofar as the challenge was made to the eastern sage-grouse. The district court concluded that it did have jurisdiction over that claim and granted relief. Right. So that it's the challenge to the practice, the policy, the overall operation of the agency that you're objecting to. Right. That's how you read this statute. Yes. The complaint, whereas the plaintiff may have a different reading. Yes, Your Honor. And why is not the claim regarding the western gray squirrel and the mono-sage-grouse sufficient to invoke jurisdiction? Well, if those had been pled as claims for relief, similar to the way the eastern sage-grouse was, then those would have been properly before the district court. But they were pleaded simply as illustrative examples of malfeasance. Right. Yes, Your Honor. I think it's important to keep in mind that under the statute, Section 4H3 of the Endangered Species Act, 16 U.S.C. 1533 H3, it is left open to the agency to promulgate agency guidelines to ensure, quote, to ensure that the purposes of this section are achieved efficiently and effectively, including, quote, a ranking system to assist in the identification of species that should receive priority review. The programmatic nature of Claim 2 is also underscored, I believe, by the corresponding relief that the Institute sought in order to prioritize responses to citizen petitions over work on non-mandatory work using funds within the listing budget over work on any citizen petitions to list the species. And that may be found at Excerpts of Record, page 28, Prayer for Relief, paragraph E and F. It seems to me that the Institute is seeking a wholesale change in the listing priority guidance that the agency has promulgated and follows in determining how to handle listing petitions that come in. The Supreme Court's decision in the Lujan case, Lujan v. National Wildlife Federation, instructs that flaws in an entire program cannot be laid before the courts for wholesale correction under the APA. And the Supreme Court, in the recent SUA decision, instructs that jurisdiction under APA Section 706-1 lies only where the agency has failed to take a discrete agency action that it is required to take. I think that Claims 2 and 3 cannot be squared with those principles of district court jurisdiction. Claim 3 broadly challenges an alleged longstanding practice, procedure, policy, and or course of conduct by the service of delaying on or failing to act on citizen petitions to list species. Now, the breadth of this claim is underscored by the corresponding relief side. For all, quote, for all petitions submitted by any person pursuant to Section 4 of the ESA, a court order requiring the agency, quote, to make all outstanding 90-day findings that have not been made within 90 days of petition submission as soon as possible and before other work is done, accepting only other court orders, settlement agreements, and emergency listings that may be found in Excerpts of Record 29, Prayer for Relief, Paragraph I. Claim 3 is no different in legal or practical effect from the programmatic challenges found impermissible under the APA by the Supreme Court in Lujan and SUA and by this Court in such cases as Ecology Center and Center for Biological Diversity v. Veneman. As for Claim 3, Claim 3 is not simply an effort to bring the service within existing ESA law as enunciated by this Court in the Badgley case. Claim 3 is premised on the notion that the service must issue 90-day findings on listing petitions within 90 days of receipt at the most and within less time if practicable. It's presumably for this reason that the Institute sought an order from the district court requiring the service to complete all outstanding 90-day findings, quote, that have not been made within 90 days of petition submission as soon as possible, unquote. And that may be found in Excerpts of Record 29, Prayer for Relief, Paragraph I. I think we understand your position. It's pretty well set out. If there are no further questions, I would just ask that the district court's judgment be approved. Are there any further questions? Thank you. Thank you. There have been a lot of adjectives used. Full sale, comprehensive. We have, like I said, identified 72 direct specific violations of congressional mandates. We would like to enforce those against the agency unless some of them have already been made. Where are they in your identified in the second amendment complaint? Your Honor, I'm sorry. I didn't hear you. I didn't hear you. Where are they identified in your second amendment complaint? We did not. We did not identify them. We didn't think it was necessary in the complaint. If it is necessary, we would like to amend the complaint. Wait a minute. You're telling me a court is wrong to dismiss a complaint because there are 72 violations. The 72 violations are not alleged in the complaint. But nevertheless, it's error to dismiss it because they're there, even though the judge doesn't know about it. We didn't know exactly how many there were. I don't think there are 72 now. There might be eight. I don't care what you knew. I care what the district court had in the record. We said all. It's notice pleading. We thought Connolly v. Gibson gave us that ability. Now, let me talk about amendment for a moment, Your Honor. You amended. We would like leave to amend again if it's jurisdictionally deficient. In 28 U.S.C. 1653, we think, gives us that ability. I can't see anything to what you're doing except the attempt to make it impossible for the agency or the court to do its work until they just cave in and surrender and put your group in charge. I mean, you say they can't dismiss a complaint, even though it doesn't say anything or allege anything or bring up any case that you think is the reason they can't dismiss it. You say that they have to put they have to do the work in the order that you claim, even though they've got too much work to do. I don't get it. Your Honor, we said all violations, all delays. Yes. Well, here's the thing. Let me put this another way. You never got the benefit of discovery to find out exactly what they were at each time. This is what is troubling me. Certainly. Of course there's notice pleading. But under the statute, the claim that you have to allege has to give the agency notice of what action it is or actions or failure to act that you're complaining about. And just to say they're not following the law gives them no notice of anything. That's the basic problem here for me. With all respect, Your Honor, we were much more specific than not following the law. We stated that there were different types of delays. Well, that's for you. We will consider that. And you only mentioned three critters. Two of the critters were acted on in other cases. And one critter was the subject of this case. And you won. You won your case on that critter. We did. We did. Well, we didn't have the benefit of discovery. And that would come after the complaint. And the service is illegally not filling our Freedom of Information Act request. So the complaint is, yeah, I won my case. But I should have had another six years of litigation before. No, we definitely don't want that. And let me point out that we are quite willing. We're a scientific organization. We're not a citizen group. We're quite willing to go through with the service and look at their candidates and have them tell us why they think X candidate ought to come before Y petition. And if they have a good idea. So the idea is for them to surrender their discretion in doing their duty to your group. Your Honor, your court has already. To sit with them and help. Your court has already decided they do not have discretion to promote candidates over petitions. Petitions. Species. Okay. Can you help us with the strongest case that supports you in your view that this lawsuit? Well, our case is that. . . What's the closest case out there that's like yours? Well, Sue Willoughby Norton is much closer. . . Oh, Cuddy Mountain is the closest case. And that does support us. You challenge one timber sale. And that gives you the ability to get an injunction for all illegal timber sales. I'm sorry. What is the case again? Cuddy Mountain. Oh, Cuddy Mountain, yeah. Yes, and that's in the briefing file. Boy, the acoustics are terrible in here. Eight seconds. I'll be glad to answer any. . . It seems to be counting up. You're going over. Yeah. That's why it's late. I've gone over. You're done. Thank you. Thank you. The case has arguably submitted for decision. That concludes the court's calendar for this morning. And the court stands adjourned.
judges: Schroeder, Kleinfeld, Bea